UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN HALL,

    Petitioner,

vs.
                                        Case No. 10-cv-12357
                                        HON. BERNARD A. FRIEDMAN

BARRY DAVIS,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

## I. Introduction

Petitioner filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529, conspiracy to commit armed robbery, MICH. COMP. LAWS § 750.529, assault with intent to rob while armed, MICH. COMP. LAWS § 750.89, two counts of felonious assault, MICH. COMP. LAWS § 750.82, and first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), following a jury trial in the Shiawassee County Circuit Court in 2005. He was sentenced as a second habitual offender, MICH. COMP. LAWS § 769.10, to concurrent terms of 25 to 50 years imprisonment on his convictions of armed robbery and assault with intent to rob while armed, 18 years 9 months to 31 years 3 months imprisonment on the conspiracy conviction, 2 years 5 months to 4 years imprisonment on the felonious assault convictions and 13 years 4 months to 20 years imprisonment on the home invasion conviction.

In his pleadings, petitioner raises claims concerning the effectiveness of trial and appellate counsel, the jury instructions, cumulative error and the constitutionality of Michigan's armed robbery

statute. Respondent filed an answer to the petition arguing that the claims lack merit. For the reasons set forth below, the Court finds that petitioner is not entitled to relief and denies the petition. The Court also denies a certificate of appealability and leave to proceed in forma pauperis on appeal.

## II.     Facts and Procedural History

Petitioner's convictions arise from his participation in an incident at a residence in Shiawassee County, Michigan on February 18, 2004. The Court adopts the facts set forth by the Michigan Court of Appeals on direct appeal, which are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Those facts are as follows:

> On February 18, 2004, defendant and a man named "Snoop" were driven by a friend to the house of one of the victims, Mark McCarthy. According to McCarthy, his housemate Michael Covert had hidden money there. Snoop alone initially went inside to talk to McCarthy, but he returned to the friend's vehicle minutes later and went back to the house with defendant. When Snoop went back, he had a gun and defendant was wearing a mask and was armed with a club. The two men pushed open the door to the house. McCarthy grabbed defendant and a fight ensued. Defendant hit him repeatedly with his club until McCarthy momentarily lost consciousness. While hitting him, defendant demanded that he tell them where Covert had hid his money. Meanwhile, Covert was in the basement with two women when Snoop came down, ordered them to lie on the floor, and demanded that they tell him the money's location. Covert gave Snoop $50 or $60, but Snoop demanded "the rest of [Covert's] money." At that point, McCarthy came "flying" down the stairs, with defendant running behind him. McCarthy recalled being thrown down the stairs, and hearing, "where's the money?" Defendant then repeatedly hit Covert with the club, and defendant and Snoop dragged him up the stairs and threatened to kill him if he did not reveal the location of his money. Covert was then thrown down the stairs and heard defendant or Snoop say, "Shoot him, kill him, get it over with, let's go." Covert then heard one of men say that the women had "got away" and may call the police. Defendant and Snoop fled. The woman who drove them to the house testified that, after defendant and Snoop came out of the house, she drove them to Detroit. She heard them say that they had "F-d up."
>
> Defendant testified on his own behalf. He denied that an armed robbery was planned and denied taking anything from McCarthy's house. Defendant claimed that he and Snoop went to McCarthy's house to deliver drugs, and Snoop went inside to discuss the matter. When Snoop came out, he indicated that McCarthy planned to "stiff them." Defendant admitted that a fight broke out when they went inside, but insisted it was over the owed money. Defendant admitted that he hit McCarthy and threw him down the stairs, but he denied having a club or wearing a mask..

*People v. Hall*, No. 260303, 2006 WL 2000098, at *1 (Mich. Ct. App. July 18, 2006) (unpublished).

Following his convictions and sentencing, petitioner filed an appeal of right with the Michigan Court of Appeals, raising claims concerning the dismissal of a juror, the sufficiency of the evidence, the effectiveness of trial counsel, and the jury instructions. The Michigan Court of Appeals denied relief on those claims and affirmed his convictions. *Id*. at *2-3. Petitioner filed an application for leave to appeal to the Michigan Supreme Court, which denied the application in a standard form order. *People v. Hall*, 477 Mich. 948 (2006).

Petitioner subsequently filed a motion for relief from judgment with the state trial court raising the same claims contained in his habeas petition. The trial court ruled that he was not entitled to relief and denied the motion. *People v. Hall*, No. 04-866-FC (Shiawassee Co. Cir. Ct. Sept. 14, 2007) (unpublished). Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, which it denied because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Hall*, No. 287780 (Mich. Ct. App. Feb. 18, 2009) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which it similarly denied. *People v. Hall*, 485 Mich. 893 (2009).

Petitioner thereafter filed the instant habeas petition, raising the following claims:

I. He was denied his constitutional right to the effective assistance of trial counsel when counsel failed to adequately communicate with him prior to trial, interview potential defense witnesses, or conduct any investigation to prepare an adequate defense for trial, failed to object to the trial court initiating and allowing Kayla Killips to assert a non-existent Fifth Amendment privilege, failed to request a cautionary accomplice instruction for Kayla Killips' limited testimony and presented a defense without legal merit.

II. His constitutional rights to due process and a properly instructed jury were violated when the trial court failed to give the jury a cautionary accomplice testimony instruction regarding the testimony of Kayla Killips.

III. He was denied a fair trial and due process of law as the result of these

>             cumulative trial errors.
>
> IV.     He was denied the effective assistance of appellate counsel on direct appeal.
>
> V.      His armed robbery conviction should be reversed because Michigan's armed robbery statute, M.C.L. 750.529, is unconstitutional under the holding in *People v. Cornell* and where the application of *Cornell*'s holding on jury instructions in the instant case violated his constitutional rights to a fair trial, due process of law, notice, and freedom from double jeopardy.

Respondent filed an answer to the petition contending that it should be denied for lack of merit.

### III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the following standard of review for federal habeas cases filed by state prisoners:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

A state court's decision is contrary to clearly established law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to

'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-521 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. __, __, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, __, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

A state court's factual determinations are presumed correct on federal habeas review. *See* 28

5

U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. __, __, 131 S. Ct. 1388, 1398 (2011).

In this case, the state trial court determined that petitioner's claims did not warrant relief from judgment and the Michigan appellate courts denied leave to appeal.  For the reasons that follow, the Court concludes that the state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

**IV.     Discussion**

**A.     Ineffective Assistance of Trial Counsel**

Petitioner asserts that he is entitled to habeas relief because trial counsel failed to communicate with him before trial, neglected to investigate his case and prepare a defense, failed to object to the trial court's decision to allow Kayla Killips to assert a Fifth Amendment privilege, failed to request a cautionary accomplice instruction and presented a wholly inadequate defense.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The

6

reviewing court's scrutiny of such performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id*. at 788.

Petitioner first asserts that trial counsel was ineffective for failing to communicate with him before trial. The record indicates that counsel met with petitioner prior to trial, reviewed the police reports, questioned witnesses about their version of the underlying facts and advocated petitioner's case. The mere fact that counsel may have spent little time with petitioner prior to trial "is not enough under *Strickland*, without evidence of prejudice or other defects." *Bowling v. Parker*, 344 F.3d 487,

7

506 (6th Cir. 2003); *accord Lenz v. Washington*, 444 F.3d 295, 303 (4th Cir. 2006) (petitioner could not prevail on claim that attorneys were ineffective due to infrequent pre-trial visits where he failed to show resulting prejudice); *Anderson v. Calderon*, 232 F.3d 1053, 1086 (9th Cir. 2000) (same). Petitioner does not explain with any specificity how additional meetings with counsel would have benefitted his defense.

Petitioner relatedly asserts that counsel was ineffective for failing to investigate his case and interview potential witnesses for his defense. Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *See Wiggins*, 539 U.S. at 522-523; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. "A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." *Id*. (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)); *see also Wiggins*, 539 U.S. at 526. That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

In this case, petitioner states that he informed trial counsel of potential witnesses, including Cortez Lemons, Kim Berkland, Jake Mikan and Colleen Wolworth, all of whom he believes would

have testified on his behalf. Nonetheless, petitioner does not produce any witness affidavits to establish their ability to testify or confirm the substance of their potential testimony. Ultimately, petitioner's conclusory allegations are insufficient to establish that counsel was ineffective under the *Strickland* standard. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).

Petitioner also asserts that trial counsel was ineffective for failing to interview Kayla Killips before trial. This claim lacks merit. Killips spoke to the police and testified at the preliminary examination before trial (and testified at trial before invoking her Fifth Amendment privilege). Petitioner has not shown how a pre-trial interview by counsel would have changed Killips' testimony and/or benefitted the defense case. Petitioner has failed to establish that counsel erred and/or that he was prejudiced by counsel's conduct. Moreover, trial counsel was able to present a reasonable and substantial defense at trial through the cross-examination of witnesses, as well as petitioner's own testimony. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Petitioner also asserts that counsel was ineffective for failing to object to the trial court's decision to allow Kayla Killips to assert her Fifth Amendment privilege. Petitioner does not establish, however, that the trial court erred or that the privilege was improperly invoked. Rather, the record reveals that Killips began implicating herself in criminal acts such as drug dealing during her direct

9

testimony. The trial court halted the proceedings, excused the jury, advised Killips of her rights, and allowed her to consult with an attorney. After doing so, Killips invoked her Fifth Amendment privilege. The court advised the jury that Killips was no longer available to testify and struck her trial testimony. The prosecution then introduced Killips preliminary examination testimony due to her unavailability as a witness. Such actions were proper under the circumstances. Consequently, petitioner cannot establish that counsel erred or that he was prejudiced by counsel's conduct because counsel may not be deemed ineffective for failing to make a futile objection or motion. *See United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

Petitioner further asserts that counsel was ineffective for failing to request a cautionary accomplice instruction. Yet, given the state court's denial of relief and this Court's determination that the underlying jury instruction claim lacks merit, *see* discussion *infra*, petitioner cannot demonstrate that counsel erred and/or that he was prejudiced by counsel's conduct in this regard. As already noted, counsel cannot be deemed ineffective for failing to make a futile request. *Id*.

Petitioner further argues asserts that counsel was ineffective for presenting an invalid "claim of right" defense. The Court notes at the outset that such a defense is unavailable under Michigan law in the context of illegal activities. *See, e.g., People v. Karasek*, 63 Mich. App. 706, 713 (Mich. Ct. App. 1975) (discussing claim of right defense and stating that it is not available where "the alleged debt in question is the product of illegal activities"). However, counsel did contend that petitioner went to the residence to complete a drug deal, that he lacked the intent to commit a robbery or conspire to do so and that the ensuing violence was mutual and/or instigated by the other parties. Given the testimony of the witnesses, including the victims and Kayla Killips, as well as petitioner's own version of events, counsel's strategy was reasonable. Again, the fact that counsel's strategy was unsuccessful

does not mean that counsel was ineffective. *Moss*, 286 F.3d at 859. As a result, petitioner has not shown that counsel erred and/or that he was prejudiced by counsel's conduct.

### B. Jury Instruction Claim

Petitioner contends that he is entitled to habeas relief because the trial court failed to *sua sponte* give the jury a cautionary instruction on accomplice testimony with respect to Kayla Killips' testimony. In order for habeas relief to be warranted on the basis of incorrect jury instructions, taken as a whole, the instructions must be so infirm that they render the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The failure to give an instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief. The failure to instruct must have rendered the petitioner's trial fundamentally unfair. *See Maes v. Thomas*, 46 F.3d 979, 984-985 (10th Cir. 1995); *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1995); *see also Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). A failure to instruct does not deprive a petitioner of fundamental fairness when the instructions as a whole adequately present his theory to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155.

In this case, an accomplice witness instruction was not appropriate because there was no evidence that Kayla Phillips was an accomplice to the crime. The trial court sufficiently ensured the fairness of the trial when it instructed the jury to determine the credibility of all witnesses. Moreover, federal courts have repeatedly held that a criminal defendant has no constitutional right to an accomplice witness instruction such that the failure of a state court to give such an instruction does not provide a basis for granting habeas relief. *See Scott v. Mitchell*, 209 F.3d 854, 883 (6th Cir. 2000); *Takacs v. Engle*, 768 F.2d 122, 127 (6th Cir. 1985); *Grant v. Rivers*, 920 F. Supp. 769, 783 (E.D. Mich.

11

1996); *accord Kappos v. Hanks*, 54 F.3d 365, 367 (7th Cir. 1995); *Smithwick v. Walker*, 758 F. Supp. 178, 186 (S.D.N.Y.), *aff'd*, 948 F.2d 1278 (2d Cir. 1991).  This is particularly true where, as here, the trial court gave a general witness credibility instruction.  *See Kappos*, 54 F.3d at 367.  Consequently, habeas relief is not warranted on this claim.

        **C.**      **<u>Cumulative Error Claim</u>**

Although petitioner maintains that he is entitled to habeas relief on account of the cumulative effect of the alleged errors at trial, he cannot establish his entitlement to relief on such a basis because he has failed to demonstrate a single underlying constitutional violation.  *See Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006).  Additionally, as explained by the United States Court of Appeals for the Sixth Circuit, the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief."  *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).  Therefore, petitioner's request for habeas relief on this ground must be denied.

        **D.**      **<u>Ineffective Assistance of Appellate Counsel Claim</u>**

Petitioner next asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the foregoing issues on direct appeal.  In order to establish ineffective assistance of appellate counsel, petitioner must show that counsel's performance was deficient and that the deficient performance was prejudicial.  *Strickland*, 466 U.S. at 687.  Judicial scrutiny of counsel's performance is "highly deferential."  *Id.* at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the. . . goal of vigorous and effective advocacy. . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner is unable to show that appellate counsel's performance fell outside the wide range of professionally competent assistance when counsel omitted the claims presented in his motion for relief from judgment. Appellate counsel presented significant claims on direct appeal, including those concerning the dismissal of a juror, the sufficiency of the evidence, the effectiveness of trial counsel (as to other issues) and the jury instructions. Petitioner has not shown that appellate counsel's strategy in presenting those claims, to the exclusion of others, was deficient or unreasonable. Additionally, given the state court's ruling and this Court's determination that the underlying claims lack merit, petitioner cannot establish that he was prejudiced by counsel's conduct.

### E.   Constitutionality of Armed Robbery Statute/Jury Instruction Claim

Finally, petitioner argues that he is entitled to habeas relief because Michigan's armed robbery statute violates the state constitution and the trial court's refusal to instruct the jury on aggravated

13

assault violated his federal constitutional rights. As an initial matter, the Court notes that petitioner is not entitled to habeas relief on any claim that Michigan's armed robbery statute is constitutionally infirm pursuant to the state constitution. It is well-established that federal habeas relief is unavailable for perceived violations of state law. *See* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 72. Moreover, state courts are the final arbiters of state law and federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

With respect to his federal constitutional claims, petitioner essentially alleges that the trial court erred in refusing to instruct the jury on the lesser offense of aggravated assault and that this refusal violated his right to present a defense. As discussed *supra*, in order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show that, taken as a whole, the instructions were so flawed as to render the entire trial fundamentally unfair. *Estelle*, 502 U.S. at 72. The failure to give an instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief. The failure to instruct must have rendered the trial fundamentally unfair. *See Maes*, 46 F.3d at 984-985; *Nickerson*, 971 F.2d at 1137; *see also Cupp*, 414 U.S. at 147; *Daniels*, 501 F.3d at 741. "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155.

Here, the Michigan Court of Appeals determined that the trial court did not err in refusing to instruct the jury on the lesser offense of aggravated assault. The court explained:

> Defendant also argues that the trial court erred in refusing to instruct the jury on the lesser included misdemeanor offense of aggravated assault, MCL 750.81a. We disagree. In *People v. Cornell*, 466 Mich 335, 354-359; 646 NW2d 127 (2002), our Supreme Court concluded that a trial court may only instruct a jury on necessarily included lesser offenses, not cognate lesser offenses. Because aggravated assault contains the element of injury, MCL 750.81a, which is not an element of armed

14

>robbery, MCL 750.529, or assault with intent to rob while armed, MCL 750.89, the
>trial court's refusal to instruct the jury on that offense was not error.

*Hall*, 2006 WL 2000098, at *3.[1]

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The Supreme Court has declined to determine whether due process requires jury instructions on lesser included offenses in non-capital cases. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980). In *Hopper v. Evans*, 456 U.S. 605, 611 (1982), the Supreme Court ruled that a capital defendant is entitled to a lesser included offense instruction only when there is evidence to support it. The Supreme Court has since held that state courts are not constitutionally required to instruct capital case juries on crimes which are not lesser included offenses of the charged crime. *See Hopkins v. Reeves*, 524 U.S. 88, 90-91 (1998). The Sixth Circuit has interpreted *Beck* to mean that due process "does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-797 (6th Cir. 1990) (en banc)); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003). Even in capital cases, there is no constitutional right to a jury instruction if the requested charge does not satisfy the legal definition of a lesser included offense. *See Hopkins*, 524 U.S. at 90-91. Cognate offenses such as aggravated assault do not meet the definition of lesser included offenses. Accordingly, petitioner's claim regarding the trial court's refusal to instruct the jury on aggravated assault is not cognizable on federal habeas review.

### F. Certificate of Appealability and In Forma Pauperis Relief

In the event petitioner appeals the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only

---

[1] This issue was raised as more of a constitutional claim in petitioner's motion for relief from judgment and related appeals – and the state courts denied relief.

if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Having conducted the requisite review, the Court concludes that petitioner has not made a substantial showing of the denial of a constitutional right as to his claims and a certificate of appealability is denied. The Court denies leave to proceed in forma pauperis on appeal because such an appeal cannot not be taken in good faith. *See* Fed. R. App. P. 24(a).

Accordingly,

IT IS ORDERED that the petition for writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

IT IS FURTHER ORDERED that leave to proceed in forma pauperis on appeal is denied.

                                        S/ Bernard A. Friedman_____
                                        BERNARD A. FRIEDMAN
                                        UNITED STATES DISTRICT JUDGE

Dated:  December 6, 2012
        Detroit, Michigan